**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EMOJI COMPANY GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-04678 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) ) ) ) ) ) | |
| Defendants. | ) | |
| EMOJI COMPANY GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-05319 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) ) ) ) ) ) | |
| Defendants. | ) | |
| EMOJI COMPANY GMBH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-05453 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Emoji Company GmbH makes no claim to have developed the familiar set of icons used to express ideas or emotions that are accessible on mobile phones. Nor does it claim to have coined the word commonly used to refer to such icons. Nonetheless, Plaintiff owns federal trademark registrations for the word "emoji," which it uses and licenses for use in connection with the marketing and sale of numerous products. Before the Court are three actions brought by Plaintiff, each naming as Defendants hundreds of online stores that it lists in a Schedule "A" attached to each complaint. In all three actions, Plaintiff alleges that each Defendant offers for sale and sells products using infringing and counterfeit versions of Plaintiff's registered trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (*Emoji Company GmbH v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto*, Nos. 1:21-cv-04678 ("*Emoji I*"), 1:21-cv-05319 ("*Emoji II*"), 1:21-cv-05453 ("*Emoji III*".) Plaintiff has moved for entry of default and default judgment against the Defendants that remain in the cases but have not answered the complaints or otherwise appeared. (*Emoji I*, Dkt. No. 57; *Emoji II*, Dkt. No. 45; *Emoji III*, Dkt. No. 59.) For the reasons stated below, the Court grants Plaintiff's motions, grants injunctive relief, and awards Plaintiff $25,000 in statutory damages as to each Defendant.

**BACKGROUND**

Plaintiff owns the trademarks covered by U.S. Trademark Registration Nos. 4,868,832, 5,202,078, and 5,415,510, with the earliest registration occurring on December 15, 2015. (Am. Compl., *Emoji I* (Aug. 10, 2020), Dkt. No. 8; Am. Compl, Ex. 1, *Emoji I* (Aug. 10, 2020), Dkt.

2

No. 8-1.)[1] Each trademark is for the word "emoji" (one is for the word in capital letters) and grants Plaintiff the exclusive right to use the mark in commerce with respect to an array of products. (Am. Compl., Ex. 1, *Emoji I*.) Plaintiff's exclusive right to use the mark covers everything from articles of clothing and snacks to "orthopaedic foot cushions" and "[p]atient safety restraints." (*Id.*)

According to Plaintiff, Defendants operate fully interactive e-commerce stores that offer for sale and sell unauthorized emoji products to customers in Illinois and throughout the United States. (Am. Compl. ¶ 13, *Emoji I*.) Plaintiff alleges that many Defendants reside in China and undertake various efforts to conceal their identities to avoid being shut down for selling counterfeit products. (*Id.* ¶¶ 13, 18–19.) Further, Plaintiff alleges that Defendants also attempt to evade Plaintiff's efforts at enforcing its intellectual property rights by moving the funds in their e-commerce accounts to bank accounts outside the Court's jurisdiction. (*Id.* ¶ 21.) Based on these claims, shortly after commencing each case presently before the Court, Plaintiff filed *ex parte* motions for temporary restraining orders that, among other things, would direct the various online marketplace platforms that host Defendants' internet stores to locate the accounts and funds connected to Defendants' stores and to restrain and enjoin any transfer or disposition of the funds in those accounts. (TRO, *Emoji I* (Mar. 29, 2021), Dkt. No. 25.) The Court issued the temporary restraining orders and also authorized service of process by email or electronic publication. On Plaintiff's motions, the operative temporary restraining orders subsequently were superseded by preliminary injunction orders. (Prelim. Inj., *Emoji I* (June 22, 2021), Dkt. No. 48.)

---

[1] Because the filings and orders in *Emoji I* are substantially identical to those in *Emoji II* and *Emoji III*, where the Court cites only the record of *Emoji I*, that record citation is representative of the analogous documents in the records in *Emoji II* and *Emoji III*.

As each case has progressed, several Defendants were voluntarily dismissed by Plaintiff, usually because the parties reached a settlement agreement. Nonetheless, a substantial number of Defendants were served, remain in the actions, and have not answered the complaint against them or entered appearances. Accordingly, Plaintiff now seeks entry of default and default judgment as to the defaulting Defendants in each case.

## DISCUSSION

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *see also Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) ("Although Rule 55(a) refers to entry of default by the clerk, it is well-established that a default also may be entered by the court." (citation omitted)). "The basic effect of an entry of default . . . is that upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (internal quotation marks omitted). Once the default has been established, the plaintiff must move for the entry of default judgment under Rule 55(b) for a determination as to its entitlement to the relief it seeks. *Id.* "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).

Here, Plaintiff has established that default and default judgment should be entered against those Defendants who have not responded or entered appearances. Plaintiff has properly served Defendants by electronic publication or email, as authorized by the Court, and the time for

answering or otherwise responding to the complaint has expired in each action. Consequently, the Court accepts the allegations in the complaints as true and concludes that the defaulting Defendants are liable for trademark infringement and counterfeiting under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), and violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

As remedies for the violations, Plaintiff first seeks permanent injunctions enjoining the defaulting Defendants from infringing or violating Plaintiff's trademark rights, along with other related equitable relief. To obtain a permanent injunction, a plaintiff must show that: "(1) it has suffered an irreparable injury; (2) legal remedies, such as monetary damages, cannot adequately compensate for that injury; (3) the balance of hardships between the parties warrants an equitable remedy; and (4) a permanent injunction would not harm the public interest." *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 955 (N.D. Ill. 2019). The first two elements are generally presumed in cases of trademark infringement. *Id.* (citing *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016)). Moreover, the balance of hardships weighs in favor of Plaintiff since "[t]here is no harm to [Defendants] to being enjoined from violating the law." *Light v. Zhangyali*, No. 15 CV 5918, 2016 WL 4429758, at *4 (N.D. Ill. Aug. 22, 2016). Finally, an injunction serves the public interest by preventing consumer confusion. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). For these reasons, the Court finds that Plaintiff is entitled to permanent injunctive relief.

Plaintiff further requests that the Court award it statutory damages of $100,000 (or, in one case, $400,000) against each defaulting Defendant pursuant to 15 U.S.C. § 1117(c). "Although upon default the factual allegations of a complaint relating to liability are taken as true, those

allegations relating to the amount of damages suffered are ordinarily not." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Generally, a default judgment may not be entered "without a hearing on damages unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *e360 Insight*, 500 F.3d at 602 (internal quotation marks omitted). However, it is generally unnecessary to conduct an evidentiary hearing where the plaintiff seeks statutory damages under 15 U.S.C. § 1117(c). *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, Nos. 03 C 5311, 03 C 4844, 2008 WL 1775512, at *3 (N.D. Ill. Apr. 17, 2008).

A plaintiff in a case involving the use of a counterfeit mark may elect to seek statutory damages in the amount of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

17 U.S.C. § 1117(c). While the statute "places a dollar range on possible statutory damages awards, [it] provides no guidance on how to select a figure within that range." *Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 14 C 9061, 2015 WL 3818622, at *2 (N.D. Ill. June 18, 2015). "Accordingly, courts interpreting [§] 1117(c) have looked by analogy to case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c)." *Id.* (internal quotation marks omitted).

The main Seventh Circuit case addressing the statutory damages factors in the copyright infringement context is *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991).

There, the Seventh Circuit explained that district courts have "wide discretion" in awarding statutory damages and are "not required to follow any rigid formula." *Id.* at 1229. Relevant factors include "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id.* (internal quotation marks omitted). In the trademark context, courts have also considered "the value of the plaintiff's brand and efforts to protect the brand." *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.*, No. 16-cv-10096, 2017 WL 6733685, at *4 (N.D. Ill. Dec. 18, 2017). Moreover, while "there is no necessary mathematical relationship between the size of a statutory damages award and the extent or profitability of the defendant's wrongful activities, statutory damages must bear some relation to actual damages." *Luxottica*, 2015 WL 3818622, at *2 (internal quotation marks omitted). Thus, "[c]ourts may look to the size and scope of a defendant's operations to determine a baseline for damages." *Id.* Finally, where the infringement is willful, "the statutory damages award may be designed to penalize the infringer and to deter future violations." *Chi-Boy*, 930 F.2d at 1229–30.

In considering the appropriate amount of statutory damages in the present cases, the Court considers Plaintiff's contention that Defendants' use of its mark was willful. Plaintiff assert that the defaulting Defendants' willfulness must be presumed pursuant to 17 U.S.C. § 1117(e). Specifically, § 1117(e) provides:

> it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator . . . knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation.

7

15 U.S.C. § 1117(e). Plaintiff contends that the complaints' allegations, taken as true due to Defendants' defaults, establish that the presumption applies because Defendants used fictitious names and addresses to register and operate their online stories.

But Plaintiff's allegations do not support the blanket application of § 1117(e)'s presumption as to all defaulting Defendants. Rather, Plaintiff alleges only that Defendants "***often*** use multiple fictitious names and addresses" and that "***many*** of Defendants' names and physical addresses used to register their Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states." (Am. Compl. ¶ 17, *Emoji I* (emphasis added).) Those allegations fail to establish that each and every defaulting Defendant provided materially false contact information to a domain name registration authority; indeed, Plaintiff implicitly acknowledges that some Defendants did not engage in such conduct. Particularly given the hundreds of Defendants involved in the three actions, the Court declines to apply § 1117(e)'s willfulness presumption to every defaulting Defendant based solely on allegations concerning the conduct of an unspecified "many" Defendants.

Plaintiff also contends that Defendants' defaults support findings of willfulness. "A court may attribute willful infringement to a defendant's actions when the defendant had knowledge that its conduct constituted infringement or where it showed a reckless disregard for the owner's rights. A defendant's knowledge can be inferred from conduct." *Ent. One*, 384 F. Supp. 3d at 952 (internal quotation marks and citation omitted). Many courts have concluded that willfulness may be inferred from a Defendant's failure to appear and defend the claims against them. *E.g.*, *Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 948 (C.D. Ill. 2014); *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011). Nonetheless, the fact of

8

default does not require the Court to make a finding of willfulness, as it is simply one of many factors a court may consider. *See Ali v. Final Call, Inc.*, 289 F. Supp. 3d 863, 868 (N.D. Ill. 2017).

Here, the Court finds the nature of Plaintiff's trademark to be relevant to the willfulness inquiry, as it raises the concern that many persons might innocently use the word "emoji" in commerce without awareness of Plaintiff's intellectual property rights. Indeed, the various images and icons commonly referred to as "emojis" have become a staple of modern communication, such that the term "emoji" is even defined in many dictionaries. *E.g.*, *Emoji*, Merriam-Webster, https://www.merriam-webster.com/dictionary/emoji (last visited Sept. 23, 2022) (defining "emoji" to mean "any of various small images, symbols, or icons used in text fields in electronic communication (as in text messages, email, and social media) to express the emotional attitude of the writer, convey information succinctly, communicate a message playfully without using words, etc."). None of the cases before this Court involves any assertion by Plaintiff that it has intellectual property rights in any particular emoji image. Nor does Plaintiff suggest that its rights extend to the use of "emoji" to describe those images in digital communications. Instead, Plaintiff appears to claim only the exclusive right to use the mark for tangible goods such as clothes, toys, or phone cases.

Based on Plaintiff's allegations and the fact of Plaintiff's registration of its marks with the U.S. Patent and Trademark Office, Plaintiff's marks are presumptively valid and sufficiently distinctive to warrant trademark protection. *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019). Nonetheless, a person may be permitted "to use otherwise trademarked language in a descriptive sense." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019). Specifically, a defendant in a trademark action may "invoke the fair use defense by demonstrating that the alleged infringement[] is a use, otherwise than as a mark which is

9

descriptive of and used fairly and in good faith only to describe the goods or services of such party." *Id.* (internal quotation marks omitted). Fair use, however, is an affirmative defense, *id.*, and none of the defaulting Defendants have appeared to assert it. But the Court believes the principle underlying the defense, "that no one should be able to appropriate descriptive language through trademark registration," *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001), is relevant to its willfulness analysis. If Plaintiff's mark can legitimately be used for a substantial number of descriptive purposes, it suggests that any particular Defendant might not have knowingly or recklessly disregarded Plaintiff's rights.

      As Plaintiff acknowledges, the word "emoji" is commonly used to describe the various digital icons used in electronic communications. By contrast, "emoji" can only function as a trademark when it is "used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *SportFuel*, 932 F.3d at 596 (internal quotation marks omitted). When Plaintiff moved for the entry of temporary restraining orders, it submitted as exhibits screenshots from each Defendant's online store of listings offering for sale allegedly infringing products. (*See generally* Reiter Decl., Ex. 2, *Emoji I* (Aug. 10, 2020), Dkt. Nos. 12–19.) It is evident from the Court's review of those screenshots that many Defendants are using the word "emoji" to describe a product that depicts one of the many digital icons commonly used in electronic communications. For example, one Defendant offered for sale a jewel encrusted pendant in the shape of the "Fire" emoji under the listing "2.00 Ct. Round Diamond Fire Emoji Charm Piece Pendant Men's 14k Yellow Gold Over." (Reiter Decl., Ex. 2 at PageID #1005, *Emoji I*, Dkt. No. 14.) Especially since "Emoji" was used in conjunction with the word "Fire," it would be reasonable to conclude that this particular Defendant honestly believed that they were using the word "Emoji" to identify the

product as depicting a specific emoji, namely the Fire Emoji. Another Defendant offered for sale a pillow depicting a smiley face emoji with the listing reading "1PC 32cm Emoji Smiley Emoticon Pillow Plush Toy Doll Pillow Soft Sofa Cushion." (Reiter Decl, Ex. 2 at PageID #289, *Emoji I*, Dkt. No. 12.) Again, the word emoji is used to describe the product as depicting a smiley face emoji. Further, the listing uses another word, "Emoticon," that is commonly associated with digital representations of facial expressions.[2] The listing's inclusion of a word describing a similar concept to an emoji suggests that both words are simply being used to describe the product being offered.

Plaintiff does not claim that Defendants commit trademark infringement by selling a Fire Emoji pendant, a smiley-face emoji pillow, or any other product depicting a particular emoji. Instead, Plaintiff claims that infringement occurs when a Defendant uses the word "emoji" in connection with the sale of those products. Put differently, Plaintiff suggests that any person who sells a product depicting a familiar emoji is forbidden from using the one word that most closely describes the image depicted. Plaintiff's right cannot be so expansive. *See Sorenson v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015) ("The hypothetical producer of "Crunchy" brand potato chips, for example, cannot block its competitors from describing their chips as crunchy. It may, though, be able to block its competitors from selling chips that are **branded** 'Crunchy.'"); *see also M.B.H. Enters., Inc. v. WOKY, Inc.*, 633 F.2d 50, 55 (7th Cir. 1980) ("There is a limit to the ability to appropriate the language for exclusive commercial use."). Given that Plaintiff has elected to pursue its claims in actions that join together large numbers of Defendants, the

---

[2] One dictionary defines "emoticon" as "a group of keyboard characters (such as :-)) that typically represents a facial expression or suggests an attitude or emotion and that is used especially in computerized communications (such as email)—compare EMOJI." *Emoticon*, Merriam-Webster, https://www.merriam-webster.com/dictionary/emoticon (last visited Sept. 23, 2022).

11

likelihood that some Defendants used or believed themselves to be using "emoji" in the descriptive sense weighs against the conclusion that each and every Defendant acted "willfully."

The Court thus declines to find that the defaulting Defendants' conduct was willful and proceeds to determine the proper amount of statutory damages to award. Notably, Plaintiff has come forward with very little competent evidence addressing the factors relevant to the Court's statutory damages determination. The primary evidentiary submission addressing the factors is a declaration submitted by Plaintiff's sales manager in connection with Plaintiff's motions for temporary restraining orders. (Pl.'s Mem. in Supp. of Mot. for TRO, Ex. 1 ("Santiago Decl."), *Emoji I* (Aug. 10, 2020), ECF No. 11-1; Santiago Decl, *Emoji II* (Oct. 7, 2021), ECF No. 10-1; Santiago Decl., *Emoji III* (Oct. 14, 2021), ECF No. 10-1.)[3] That declaration, however, consists mostly of conclusory statements lacking in specific evidentiary support. *See, e.g.*, *NBA Props., Inc. v. Yan Zhou*, No. 16-cv-11117, 2017 WL 4074020, at *3 (N.D. Ill. Sept 14, 2017) (noting that the defendants' arguments addressing the proper amount of statutory damages were "unpersuasive as the affidavits they offer in support . . . are conclusory and are unsupported by documentary evidence"); *FirstMerit Bank, N.A. v. Balin*, No. 11 C 8809, 2012 WL 4017948, at *4 (N.D. Ill. Sept 11, 2012) (explaining, in connection with a motion for summary judgment, that the conclusory statements made by the defendants' declarant were not sufficient to create a disputed issue of fact). In addition, Plaintiff filed a supplemental submission in *Emoji I* that provided some information regarding Plaintiff's licensing and enforcement efforts but contained little in the way of specific details or documentary support.

The Court considers the evidence offered by Plaintiff in light of the relevant factors to determine whether Plaintiff should be awarded a sum greater than that statutory minimum under

---

[3] The Santiago Declarations submitted in *Emoji I*, *Emoji II*, and *Emoji III* are substantially identical.

§ 1117(c). First, the Court considers the lack of a finding of willful infringement as a mitigating circumstance. Moreover, the numerous potential descriptive uses for Plaintiff's mark are relevant to the Court's consideration of the efficacy of its damages award as a deterrent to future infringement. Specifically, the Court believes it appropriate to balance the deterrent value of the award against the risk of deterring innocent conduct.

One factor supporting a higher statutory damages award is that Defendants' counterfeiting activities took place online and thus were capable of reaching a wide consumer base. *Luxottica*, 2015 WL 3818622, at *2 (N.D. Ill. June 18, 2015). But that is the only evidence Plaintiff has provided the Court concerning the size and scope of any Defendant's operations or the profitability of their activities. Presumably, Plaintiff could have made some evidentiary showing on these issues given that the injunctive relief entered in all three actions authorized Plaintiff to conduct expedited discovery, including discovery concerning "the nature of Defendants' operations and all associated sales and financial information." (TRO § 5(b), *Emoji I*.) Similarly, the Court has relatively little information from which it can assess the harm Plaintiff suffers from the defaulting Defendants' conduct. Nonetheless, Plaintiff claims that it "is in the business of developing, marketing, selling and distributing EMOJI products" (Santiago Decl. ¶ 4, *Emoji I*), and that Plaintiff's primary business consists of licensing the right to use the "emoji" mark to third parties, as its "network of licensed users has resulted in retail sales of EMOJI branded products exceeding $800 million annually." (Suppl. Mem. at 1, *Emoji I* (May 7, 2021), ECF No. 38.) Yet Plaintiff does not provide any details as to how much income it generates from its various licensing arrangements. Thus, the Court lacks sufficient factual basis to conclude that a substantial statutory damages award would have "a plausible relationship to Plaintiff's actual

13

damages" and not provide Plaintiff a windfall. *Atari Interactive Inc. v. Redbubble, Inc.*, No. 18-cv-03451-JST, 2021 WL 2766893, at *4 (N.D. Cal. June 29, 2021).

Finally, the Court considers the value of Plaintiff's brand and its efforts to protect that brand. Plaintiff has shown that it takes significant efforts to enforce its trademark rights by way of litigation in this Court and in courts around the country. There is also evidence demonstrating that Plaintiff undertakes substantial licensing efforts, and its licensing efforts have won plaudits from unspecified players in the licensing industry. (Santiago Decl. ¶ 4, *Emoji I*.) However, there is less evidence speaking to the value of Plaintiff's brand. Given the ubiquity of the word "emoji" as a reference to the various images and icons used in electronic communications, it is especially important that Plaintiff come forward with evidence demonstrating that the term is also known as an identifier of Plaintiff as a source of goods. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 705 (7th Cir. 2014) ("Trademark law protects the source-denoting function of words used in conjunction with goods and services in the marketplace, not the words themselves."). Yet Plaintiff offers only the conclusory statement that it "has expended substantial time, money and other resources in developing, advertising and otherwise promoting the EMOJI Trademark. As a result, products associated with the EMOJI Trademark are recognized and exclusively associated by consumers, the public and the trade as being products sourced from" Plaintiff. (Santiago Decl. ¶ 8, *Emoji I*.) Other than its say-so, Plaintiff offers no evidence demonstrating, for instance, that consumers actually associate Plaintiff with emoji products such as those offered for sale by Defendants. Plaintiff also claims without elaboration that it ensures that authorized products bearing its marks are "manufactured to [Plaintiff's] high-quality standards." (*Id.* ¶ 13.)

Accounting for all the relevant factors, the Court concludes that a statutory damages award of $25,000 against each defaulting Defendant is a just damages award. That figure is below Plaintiff's requested awards because it accounts for the many possible fair uses of Plaintiff's mark as well as Plaintiff's failure to present sufficient evidence concerning many key factors relevant to the statutory damages determination. On the other hand, the award is greater than the minimum authorized by § 1117(c)(1) in light of the need for deterrence, the fact that Defendants' infringing conduct occurred online, and Plaintiff's evidence of its licensing efforts and efforts at enforcing its trademark rights.

## CONCLUSION

For the foregoing reasons, Plaintiff's motions for entry of default and default judgment (*Emoji I*, Dkt. No. 57; *Emoji II*, Dkt. No. 45; *Emoji III*, Dkt. No. 59) are granted. Plaintiff is awarded statutory damages of $25,000 from each of the defaulting Defendants.

ENTERED:

Dated: September 26, 2022

_____

Andrea R. Wood
United States District Judge